IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| OLGA M. NATAL ROSADO, | |
| Plaintiff, | CIVIL ACTION FILE NO. |
| v. | 1:23-cv-3761-TWT-JKL |
| DEKALB COUNTY SCHOOL DISTRICT, | |
| Defendant. | |

## NON-FINAL REPORT AND RECOMMENDATION

This employment discrimination case is before the Court on Defendant DeKalb County School District's ("DCSD") Motion for Partial Judgment on the Pleadings. [Doc. 17.]  For the reasons discussed below, it is **RECOMMENDED** that the motion be **GRANTED IN PART and DENIED IN PART**.

## I.   BACKGROUND[1]

In August 2014, DCSD hired Plaintiff as an English Learner Success Facilitator.  (*See* Am. Compl. [Doc. 13] ¶ 6.)  Beginning in 2015, Plaintiff applied for several promotions for which she was qualified, but she was not interviewed

---

[1] The undersigned relies on the amended complaint, plus the attached documents, in summarizing the relevant factual background.  *See* Fed. R. Civ. P. 10(c).

for the positions.  (*Id.* ¶ 10.)  In 2019, Plaintiff complained, both verbally and in writing, to management about discriminatory employment practices, but her complaints were ignored.  (*Id.* ¶ 11.)  After complaining, Plaintiff was given a 20-minute interview for one position but was not selected for the position.  (*Id.* ¶ 12.)  From April to July 2020, Plaintiff applied for Assistant Principal, Coordinator III, and Manager III positions at five different elementary schools, but was not chosen for an interview for any of the positions.  (*Id.* ¶ 13.)  In August 2020, Plaintiff resigned, which she characterizes as a constructive discharge.  (*Id.* ¶ 14.)

On November 24, 2020, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), checking the form's boxes to indicate she was alleging discrimination based on her national origin and age as well as retaliation for complaining about discriminatory practices.  [Doc. 13-1.]  In the narrative section, she wrote that she believed she had been "discriminated against because of [her] Hispanic heritage/national origin (Puerto Rican) . . . and because of [her] age (55)."  [*Id.* at 1.]  The EEOC issued Plaintiff's Right to Sue letter on May 25, 2023.  [Doc. 13-2.]

In June 2023, Plaintiff applied to additional job openings with DCSD.  (Am. Compl. ¶ 18.)  These openings were for counseling, recruiting, and management

positions, including an assistant principal position.  (*Id.* ¶ 19.)  She was not interviewed for any of the positions.  (*Id.* ¶ 20.)

On August 23, 2023, Plaintiff filed her complaint.  [Doc. 1.]  On February 21, 2024, Plaintiff filed her amended complaint, the current operative complaint. In it, she brings the following claims: National Origin Discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") (Count I); National Origin Disparate Impact under Title VII (Count I-A); Race Discrimination under Title VII (Count II); Race Disparate Impact under Title VII (Count II-A); Retaliation Discrimination under Title VII (Count III); Race Discrimination under Section 1981 (Count IV); Retaliation Discrimination under Section 1981 (Count V); Age Discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA") (Count VI); and Age Disparate Impact[2] (Count VI-A).  (Am. Compl. ¶¶ 22-79.)   Regarding the Age Disparate Impact claim, Plaintiff asserts that Defendant's hiring, employment, and promotion policy and practice was to select from social network members, including but not limited to sorority members, which had a disparate impact on employees and applicants over 40.  (*Id.* ¶¶ 77-78.)

---

[2]  The amended complaint labels this claim as "Age Disparate Impact under Title VII," but Plaintiff states this was a "clearly a scrivener's error" [Doc. 22 at 18 n. 8] and Defendant's brief assumes that Plaintiff is bringing a disparate impact claim under the ADEA, rather than Title VII [*see* Doc. 17 at 12].

Now, Defendant moves for partial judgment on the pleadings, arguing that (1) Plaintiff's Title VII race discrimination claims fail because she failed to exhaust those claims; (2) her Title VII and ADEA claims are unexhausted to the extent that they rely on alleged post-charge discrimination or retaliation; (3) to the extent her claims rely on alleged discrimination prior to May 28, 2020, they are time-barred; (4) her retaliation claims fail because she has not pled facts that plausibly show constructive discharge; and (5) she fails to sufficiently plead an age-based disparate impact claim because she has merely pled a reasonable, generalized policy that has an incidental impact on older workers. [Doc. 17 at 5-6.]  Plaintiff has responded in opposition [Doc. 22], Defendant has replied [Doc. 23], and Plaintiff has filed a surreply, along with a motion to do so [Doc. 25].  Given that Defendant has not opposed the surreply motion, Plaintiff's request [Doc. 25] is **GRANTED** and the Court will consider the surreply.   Defendant's motion for judgment on the pleadings is now ripe for review.

## II.    STANDARD OF REVIEW

"A judgment on the pleadings is appropriate when there are no issues of material fact and the movant is entitled to judgment as a matter of law." *Samara v. Taylor*, 38 F.4th 141, 152 (11th Cir. 2022).  This type of motion is analyzed under the same standard "as a motion to dismiss under Rule 12(b)(6)." *Id.* (quoting

4

*Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018)). Accordingly, a court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint need not provide "detailed factual allegations," but it must provide factual allegations sufficient to set forth the plaintiff's entitlement to relief. *Twombly*, 550 U.S. at 555. Providing only "labels and conclusions" is insufficient, "and a formulaic recitation of the elements of a cause of action will not do." *Id.* The Court is not required to accept as true legal conclusions couched as factual statements. *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not [shown]—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Furthermore, if assuming the truth of the factual allegations of the amended complaint, there is a dispositive legal issue that precludes relief or if it is based on a meritless legal theory, dismissal is warranted. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989); *see also Brown v. Crawford Cnty., Ga.*, 960 F.2d 1002, 1010 (11th Cir. 1992).

### III.   DISCUSSION

#### A.   Race Discrimination Claims (Counts II, II-A)

First, Defendant argues that Plaintiff's race discrimination claims under Title VII are barred by her failure to exhaust administrative remedies.  [Doc. 17 at 6-7.] Defendant asserts that Plaintiff's EEOC charge raised only claims of national origin discrimination, age discrimination, and retaliation, and made no allegations tying any action by Defendant to her race, and thus, her amended complaint's allegations of race discrimination exceed the scope of the EEOC investigation and are unexhausted.  [*Id.* at 7.]  Plaintiff argues that her race discrimination claims do not exceed the scope of the EEOC investigation because they are like, related to, or grew out of the allegations in her charge.  [Doc. 22 at 8-10.]  Plaintiff highlights that she noted her "Hispanic heritage" in the narrative portion of the EEOC charge. [*Id.* at 9.]  Defendant replies that Plaintiff's specific wording in the EEOC charge— "I believe I have been discriminated against because of my Hispanic heritage/national origin (Puerto Rican)"—and the fact that she did not check the race discrimination box on the form shows that she intended to raise her claims based solely on her national origin.  [Doc. 23 at 1-3.]  In her surreply, Plaintiff cites

extensively from *Deravin v. Kerik*, 335 F.3d 195 (2d Cir. 2003)[3] to support her argument that she clearly invoked race factually in her EEOC charge and, therefore, she exhausted her race discrimination claims.  [Doc. 25-1 at 3-6.]

Before filing a Title VII lawsuit, a plaintiff must first exhaust her administrative remedies by filing a charge of discrimination with the EEOC. *Stamper v. Duval Cnty. Sch. Bd.*, 863 F.3d 1336, 1339-40 (11th Cir. 2017).  The purpose of this step is to allow the EEOC to "have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts."  *Gregory v. Ga. Dep't of Hum. Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004) (quotation marks omitted).  The judicial complaint is then "limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  *Id.* at 1280 (quotation marks omitted).  The scope "should not be strictly interpreted," and the proper inquiry for this Court is whether the complaint "was like or related to, or grew out of, the allegations contained in her EEOC

---

[3] In *Deravin*, the plaintiff checked the boxes marked "retaliation" and "national origin" in his EEOC complaint and wrote that Irish-American employees were given preferential treatment. 335 F.3d at 199.  The Court of Appeals for the Second Circuit determined that the plaintiff's allegations were sufficient to alert the EEOC to look for potential race discrimination and therefore, the plaintiff had adequately exhausted his race discrimination claim.  *Id.* at 202-03.

charge." *Id.*  Procedural defects, such as a failure to check a box, "are not to stand in the way of Title VII complainants." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465 (5th Cir. 1970).[4]

Here, dismissal of Plaintiff's Title VII race discrimination claims based on exhaustion is not appropriate at this stage.  Although race discrimination claims do not necessarily grow out of national origin discrimination allegations, *Sisay v. Greyhound Lines, Inc.*, 34 F. Supp. 2d 59, 64 (D.D.C. 1998), the "line between national origin discrimination and racial discrimination is an extremely difficult one to trace," *Bullard v. OMI Ga., Inc.*, 640 F.2d 632, 634 (5th Cir. 1981), and Plaintiff's EEOC complaint included information that could have triggered an administrative investigation into racial discrimination.  Specifically, Plaintiff stated that she was discriminated against based on her "Hispanic heritage/national origin (Puerto Rican)," which suggests that she was complaining about discrimination based on two separate protected categories.  *See Vill. of Freeport v. Barrella*, 814 F.3d 594, 607 (2d Cir. 2016) (determining "that discrimination based on ethnicity, including Hispanicity or lack thereof, constitutes racial discrimination under Title

---

[4] Decisions of the Fifth Circuit issued on or before September 30, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

8

VII" and explaining courts' difficulty in characterizing claims involving discrimination against individuals of Hispanic descent).  The simple fact that Plaintiff did not check the "Race" discrimination box on her EEOC complaint does not preclude her from bringing a race discrimination claim now.

Accordingly, Defendant is not entitled to dismissal of these claims under an exhaustion argument as a matter of law and it is **RECOMMENDED** that Defendant's motion on this issue be **DENIED**.  Regardless, this analysis will likely have no practical impact on this case because it appears, looking at the face of the complaint, that Plaintiff's Title VII race discrimination claims and Title VII national origin discrimination claims are duplicative.

### B.     Post-EEOC Charge Allegations (Counts I, I-A, II, II-A, III, VI, and VI-A)

Next, Defendant argues that, to the extent that her discrimination and retaliation claims under Title VII and the ADEA are based on her June 2023 applications for employment, those claims are unexhausted because those acts occurred after she filed her EEOC charge and before she filed this action.  [Doc. 17 at 7-9.]  Plaintiff responds that she can raise a discrimination claim based on the June 2023 application denials because they were reasonably related to her EEOC charge and without material differences from what she described in the charge as having occurred since 2015.  [Doc. 22 at 10.]  She further argues that, under the

9

*Gupta/Baker*[5] exception, it was unnecessary for her to exhaust her retaliation claim based on the June 2023 application denials.  [*Id.* at 10-13.]  Defendant replies that Plaintiff's circumstances are factually analogous to those in *Duble v. FedEx Ground Package Sys., Inc.*, 572 F. App'x 889 (11th Cir. 2014), where the Eleventh Circuit determined that the *Gupta/Baker* exception did not apply where the plaintiff failed to amend his EEOC charge or file a new charge regarding a discrete retaliatory act that occurred after his initial charge.  [Doc. 23 at 5-6.]

As discussed earlier, before filing a Title VII or ADEA lawsuit, a plaintiff must exhaust her administrative remedies by filing a charge with the EEOC and then the judicial complaint is limited by the scope of the EEOC investigation that could have reasonably been expected to grow out of that EEOC charge.  *See Giles v. BellSouth Telecommunications, Inc.*, 542 F. App'x 756, 758-59 (11th Cir. 2013).  Judicial claims "are allowed if they amplify, clarify, or more clearly focus the allegations in the EEOC complaint" but "allegations of new acts of discrimination are inappropriate."  *Gregory*, 355 F.3d at 1279-1280 (quotation marks omitted).

Under the "*Gupta/Baker* exception," it is, however, "unnecessary for a plaintiff to exhaust administrative remedies prior to filing a judicial claim of

---

[5] This refers to *Gupta v. East Texas State University*, 654 F.2d 411 (5th Cir. 1981) and *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167 (11th Cir. 1988).

retaliation if that claim grew out of an earlier charge" that is properly before the court. *Duble*, 572 F. App'x at 892 (quotation marks omitted).  In *Gupta*, the plaintiff filed two EEOC charges, which included alleged retaliatory actions, commenced a lawsuit, and then while the case was pending, his employment contract was not renewed.  654 F.2d at 413.  The Court of Appeals determined that, under those circumstances, it was unnecessary for the plaintiff to file a charge with the EEOC before amending the complaint to include a new retaliation claim based on the contract non-renewal because the claim grew out of the charge that was already before the court. *Id.* at 414.  In *Baker*, the plaintiff filed an EEOC charge, commenced a lawsuit, and then while the case was pending, filed a motion for a preliminary injunction to enjoin allegedly retaliatory actions taken by her employer as a result of her filing the lawsuit.  856 F.2d at 168.  The Court of Appeals determined that plaintiff was not required to exhaust her administrative remedies for the court to hear the motion. *Id.* at 169.  In two unpublished cases, cited by Defendant, the Eleventh Circuit determined that the *Gupta*/*Baker* exception does not apply where the retaliatory conduct occurred before the plaintiff filed suit in district court and the plaintiff had the opportunity to amend his EEOC charge or file a new EEOC charge, but simply chose not to. *See Ellison v. Postmaster Gen.,*

*United States Postal Serv.*, No. 20-13112, 2022 WL 4726121, at *8 (11th Cir. Oct. 3, 2022); *Duble*, 572 F. App'x at 893.

Here, first, Plaintiff's threadbare argument that she can raise discrimination claims based on the June 2023 application denials is unpersuasive.  She asserts the June 2023 applications are reasonably related to her 2020 EEOC charge, but she fails to explain how they are related or cite any support for her argument.  The June 2023 application denials are, instead, "allegations of new acts of discrimination," which did not grow out of the allegations contained in her EEOC charge and therefore, required exhaustion.  *See Gregory*, 355 F.3d at 1279-1280.  Simply put, the EEOC completed its investigation before the 2023 application denials, so the denials could not have reasonably been expected to have been part of the EEOC investigation.

Plaintiff's second argument about retaliation fares no better.  The 2023 application denials are discrete acts that occurred after the EEOC investigation ended and before she filed this lawsuit, which is a markedly different situation than the circumstances in *Gupta* and *Baker*.  In those cases, the plaintiffs alleged retaliatory acts that were escalations of allegations already before the court.  Here, by contrast, the denials occurred before this lawsuit was filed.  The *Gupta/Baker* exception encompasses retaliation claims that naturally arise after the filing of the

EEOC charge (*e.g.*, terminating a plaintiff's employment after suspending her) and here it cannot be said that the 2023 application denials naturally grew out of the EEOC charge.  They instead are entirely separate from the EEOC charge, which involved alleged discrimination and retaliation before an alleged constructive discharge.  The practical considerations that *Gupta/Baker* are based upon—preventing needless procedural hurdles for a plaintiff already in court and facing retaliation for exercising their rights—are simply not implicated here.

Accordingly, Defendant is entitled to judgment as a matter of law on Plaintiff's Title VII and ADEA discrimination claims (Counts I, I-A, II, II-A, VI, and VI-A) and Plaintiff's Title VII retaliation claim (Count III) to the extent those claims are based on the denials of her June 2023 applications and it is **RECOMMENDED** that Defendant's motion on this issue be **GRANTED**.

### C. Pre-May 2020 Allegations (Counts I, I-A, II, II-A, III, VI, and VI-A)

Next, Defendant argues that, to the extent Plaintiff's Title VII and ADEA claims rely on acts before May 28, 2020—180 days before the EEOC charge—[6] they are barred by the statutes of limitations. [Doc. 17 at 9-10.]  Plaintiff's response

[6] Georgia is a non-deferral state, *see Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001), so a plaintiff must file an EEOC charge within 180 days of the discrimination or the claim is time-barred, 42 U.S.C. § 2000e-5(e); 29 U.S.C. § 626(d).

13

is difficult to discern, but ultimately, she states that alleged discriminatory acts that occurred before May 28, 2020, may be used simply as evidence "to support the standing claims," citing *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113 (2002). [Doc. 22 at 15; Doc. 25-1 at 7.]

Plaintiff is correct that she may use "the prior acts as background evidence in support of a timely claim." *See Morgan,* 536 U.S. at 113. But that is the extent of their use. Any discrete discriminatory acts prior to May 28, 2020—such as failure to promote and refusal to hire—are not actionable, even if they relate to the timely filed charges. *See id.* at 114 ("Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"). Accordingly, to the extent Plaintiff's Title VII and ADEA claims rely on acts prior to May 28, 2020, they are barred by the statutes of limitation and it is **RECOMMENDED** that Defendant's motion on this issue be **GRANTED**.

**D.     Title VII and § 1981 Retaliation Claims Based on Constructive Discharge (Counts III and V)**

Next, Defendant argues that Plaintiff fails to state a claim of retaliation based on her resignation because she did not provide sufficient factual allegations that could support a plausible inference that her work environment was so unbearable that a reasonable person in her position would have been compelled to resign. [Doc.

14

17 at 10-12.] Plaintiff responds that she had to work for years doing tasks outside her job description, being mistreated, and being refused promotion, which is sufficient to allege she was constructively discharged. [Doc. 22 at 16-17.]

First, the Court reviews what Plaintiff specifically alleges in her amended complaint. In the facts section, Plaintiff alleges that she "performed different duties outside her job description," she was denied opportunities to be considered for different promotional positions, she complained about discriminatory practices and was ignored, and in August 2020, was "constructively discharged." (Am. Comp. ¶¶ 7, 10-11, 14.) Under Count III ("Retaliation Discrimination Under Title VII"), Plaintiff alleges that she "suffered adverse employment action in being blacklisted and rejected from advancement and hiring" and that there "was a causal connection between the protected complaints and conduct, including but not limited to, having to resign in a constructive termination situation." (*Id.* ¶¶ 46-47.) Under Count V ("Retaliation Discrimination Under Section 1981"), Plaintiff again alleges that there "was a causal connection between the protected complaints and conduct, including but not limited to, having to resign in a constructive termination situation." (*Id.* ¶ 63.)

"To establish a claim of retaliation under Title VII or section 1981, a plaintiff must prove that he engaged in statutorily protected activity, he suffered a materially

adverse action, and there was some causal relation between the two events." *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008). Plaintiff can satisfy the adverse action requirement through a theory of constructive discharge by showing that a "reasonable person in [her] position would have felt compelled to resign." *Davis v. Legal Servs. Ala., Inc.*, 19 F.4th 1261, 1268 (11th Cir. 2021).

Here, Plaintiff's allegations regarding a constructive discharge are threadbare and conclusory. The amended complaint fails to provide any factual matter to plausibly support her allegation that she experienced a constructive discharge. Instead, she simply states she had "to resign in a constructive termination situation" and does not explain the conditions under which she resigned, let alone provide sufficient information to allow the Court to infer that a reasonable person would have felt compelled to resign. She references performing duties outside her job description and being passed over for positions, but this "does not paint a picture of intense, intolerable harassment usually seen in cases of constructive discharge." *See Davis*, 19 F.4th at 1268. Accordingly, Plaintiff has failed to state a claim of retaliation based on her resignation. Defendant is entitled to dismissal of the retaliation claims as a matter of law to the extent those claims

are based on her resignation, and it is **RECOMMENDED** that Defendant's motion

on this issue be **GRANTED**.

### E. Disparate Impact Under the ADEA (Count VI-A)

Finally, Defendant argues that Plaintiff fails to state a claim of disparate

impact under the ADEA because she does not plead sufficient facts regarding

Defendant's allegedly unlawful hiring, employment, and promotion practices to

raise a plausible inference that those practices raise a right to relief on a disparate

impact theory. [Doc. 17 at 12-13.] Defendant asserts that the allegation that it

hired from individuals' social networks is not, on its face, an age-based practice

and Plaintiff fails to provide any factual allegations regarding the results of this

practice that might support an inference that the policy resulted in a disparate

impact based on age. [*Id.* at 13.] Plaintiff responds that she is alleging a hiring

practice that involves preference to sorority members, which skew toward college

age employees, which is "sufficient to raise the necessary inferences in [her] favor."

[Doc. 22 at 19.]

Looking at the amended complaint, Plaintiff alleges that "Defendant's hiring,

employment, and promotion policy and practice was to select from social network

members, including but not limited to sorority members," that this policy had a

disparate impact on employees and applicants over 40, and that she was "harmed based on this disparate impact."  (Am. Compl. ¶¶ 77-79.)

Disparate impact claims under the ADEA involve employment practices that are facially neutral but "in fact fall more harshly on one group than another." *Smith v. City of Jackson, Miss.*, 544 U.S. 228, 239 (2005) (quoting *Teamsters v. United States*, 431 U.S. 324, 335 n. 15 (1977)).  The ADEA "significantly narrows its coverage" compared to Title VII disparate impact claims "by permitting 'otherwise prohibited' action 'where the differentiation is based on reasonable factors other than age.'"  *Id.* at 233 (quoting 29 U.S.C. § 623(f)(1)).  The prima facia requirements for an ADEA disparate impact claim are governed by *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642 (1989), which requires a plaintiff to identify a specific employment practice that is allegedly responsible for any observed statistical disparities.  *Id.* at 240-41.

Here, to the extent that the social network/sorority policy exists and could be considered a facially neutral employment practice, Plaintiff still fails to explain how such a policy would have caused a disparate impact based on age.  She argues in her response brief that "active participants in sororities skew to college age" but the amended complaint does not allege Defendant had a policy to only hire active participants in sororities or college-aged individuals. Nor does the amended

18

complaint contain any facts showing how this policy resulted in an adverse impact on people over the age of 40. *See Woods v. Lockheed Martin Corp.*, No. 1:18-CV-03501-SDG, 2020 WL 11884829, at *3 (N.D. Ga. Sept. 29, 2020), aff'd, No. 21-13882, 2022 WL 2972852 (11th Cir. July 27, 2022) (explaining that the plaintiff's disparate impact claim required dismissal because of the failure to allege any facts showing how the implementation of a facially neutral policy resulted in an adverse impact on a protected group); *see also Summers v. Winter*, 303 F. App'x 716, 719 (11th Cir. 2008) ("It is not enough for an employee to simply allege that there is a disparate impact on workers." (quotation marks omitted)). Plaintiff's factual allegations boil down to Defendant using social networks and sorority ties in its hiring efforts and, therefore, do not permit the Court to infer more than the mere possibility of misconduct.  In sum, Plaintiff has not pled sufficient factual matter, accepted as true, to state a claim to relief, so judgment on the pleadings on this claim is appropriate.  Accordingly, Defendant is entitled to dismissal of the ADEA disparate impact claim (Claim VI-A) as a matter of law and it is **RECOMMENDED** that Defendant's motion on this issue be **GRANTED**.

## IV.  CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Defendant's motion [Doc. 17] be **GRANTED IN PART AND DENIED IN PART.**  Specifically,

19

Plaintiff's Title VII race discrimination claim should be **ALLOWED TO PROCEED**; (2) her Title VII and ADEA claims should be **DISMISSED** to the extent that they rely on alleged post-charge acts of discrimination or retaliation; (3) her Title VII and ADEA claims should be **DISMISSED** to the extent that they rely on alleged discrimination prior to May 28, 2020; (4) her Title VII and § 1981 retaliation claims should be **DISMISSED** to the extent they are premised on a theory that her resignation from employment constituted a constructive discharge; and (5) her ADEA disparate impact claim should be **DISMISSED**.

IT IS SO RECOMMENDED this 26th day of July, 2024.

_____
JOHN K. LARKINS III
United States Magistrate Judge